JOHN GOFF, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion filed January 18, 1918.

1. It is not error to refuse to give a requested instruction when the matters of law embraced therein had been fully and more correctly previously given in the general charge.

2. When the time intervening between a homicide and the defendant's acts or statements does not appear, such statements or acts cannot be admitted as a part of the *res gestae.*

3. All declarations and acts of the parties to a transaction which are contemporaneous with and accompany it, and are calculated to throw light upon the motives and intention of the parties to it are admissible as parts of the *res gestae*. A more liberal statement of the rule as announced by many recent decisions is that not only such declarations and acts as accompany the transaction are admissible as parts of the *res gestae*, but also such as are made or per-

formed under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance or act created by or springing out of the transaction itself and so soon thereafter as to exclude the presumption that they were the result of premeditated design.

4. The refusal of the trial court to grant a new trial for insufficiency of evidence to sustain the verdict, or because the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the appellate court that is wrong and unjust.

Writ of Error to Circuit Court for Calhoun County, C. L. Wilson, Judge.

Judgment affirmed.

*W. E. B. Smith,* for Plaintiff in Error;

*Van C. Swearingen,* Attorney General, and *Worth W. Trammell,* Assistant, for the State.

JONES, Circuit Judge.—The plaintiff in error and one Bill Roberts were indicted and tried jointly for murder in the first degree of one Mack Paul. The plaintiff in error was convicted of murder in the second degree and sentenced to life imprisonment, and Bill Roberts was acquitted. From such judgment and sentence the plaintiff in error seeks relief here by writ of error.

There are seven assignments of error, and these will be considered in the order of their presentation.

The first assignment is that "The court erred in refusing to give the special written charge numbered one requested by the defendant, as follows: 'In arriving at

your verdict in this case, if you believe the defendant, seeing what he saw, knowing what he knew and believing he was in imminent danger of serious bodily harm as any reasonable and prudent person would have believed under similar circumstances, cut the deceased, as he honestly believed in defense of himself, then you should find him not guilty.   It matters not whether the life of Goff was in danger or not, yet if the danger appeared real to him, as it would have to any reasonably prudent person under similar circumstances, and the defendant acted under an honest belief he was in serious danger, then he had the right to protect himself even to the extent of taking life.' "

Counsel for plaintiff in error  in his  argument here seems to have overlooked that portion of the court's general charge which embraces the law of self defense more fully and correctly than  does the requested instruction. The court in his general charge instructed the jury that "a man is justified in taking life when without being himself the aggressor in bringing on the difficulty he is, or reasonably believes himself to be in present imminent danger of death, or of receiving some great bodily injury at the hands of another, and his acts are, or reasonably seem to be, necessary to protect himself from such imminent danger.   In order that he may be so justified, it is not essential that there be real danger, if there be only apparent danger, but the appearances  are  such that a reasonably prudent and cautious man in the same situation would believe the danger real, and the defendants did so believe they would be justified in taking such steps and using such force and means, and only such force and means as reasonably seemed to be necessary to avert such real or apparent danger." The requested instruction was properly refused.   Jarvis v. State, 73 Fla. 635, 74 South. Rep. 794.

The second assignment of error is that the court erred in refusing to give special charge requested No. 2, as follows: "In this case the State relies on circumstantial evidence for conviction, and while such evidence may be relied upon, yet if the circumstances are as consistent with innocence as with guilt, you should find defendant not guilty." There was no error in the refusal to give this instruction because the court gave in the general charge full and correct instructions upon the law of circumstantial evidence. Ciprian v. State, 73 Fla. 858, 74 South. Rep. 980.

The third and fourth assignments of error are based upon the ruling of the court in refusing to permit the witness Dr. Dowling to answer the following questions propounded by defendant:

"(3) Didn't you receive a message as being sent from Goff to you?

"(4) Do you know whether or not Goff went up to that house to have these people phone to you?"

The fifth and sixth assignments are based upon the refusal of the court to permit the defendant Goff to answer the following questions propounded to him by his counsel:

"(5) After the cutting what happened?

"(6) Will you state whether or not immediately after the cutting which you say you had to do to protect yourself you made any effort to get a doctor there to the man who was cut?"

The testimony sought by the questions embraced in the third, fourth and fifth assignments was to show some act of defendant Goff. Before testimony of such acts could be received in favor of defendant it should have been shown that such act was a part of the *res gestae*. The doctor testified that he reached the scene of the difficulty

forty or fifty minutes after the difficulty was said to have occurred. It is not shown what time elapsed after the difficulty before the message inquired about was sent, nor what defendant was doing during the intervening time. The question "After the difficulty what happened," was too indefinite, as it referred to no particular event or circumstance, and too general as to time in which something may or may not have happened. When the time intervening between a homicide and the defendant's acts or statements does not appear, such statement or act cannot be admitted as a part of the *res gestae*. 6 Ency. of Evidence 615 text and citations.

It was held in State v. Garrand, 5 Ore. 216, "To make declarations a part of the res gestae they must be contemporaneous with the main fact, but in order to be contemporaneous they are not required to be precisely concurrent in time. If the declaration springs out of the transaction, if it elucidates it, if it is voluntary and spontaneous and if it is made at a time so near to the main transaction as reasonably to preclude the idea of deliberate design it is then to be regarded as contemporaneous," and each case must of course depend upon its facts and the trial court must exercise a sound discretion in determining whether the facts bring the offered evidence within the rule. Lambright v. State, 34 Fla. 564, 16 South. Rep. 582. Applying this rule to the question embraced in the sixth assignment of error and the testimony sought by the question, it is clear that the court erred in not permitting the defendait to answer it. The defendant had testified that he and the deceased had cursed each other and deceased had knocked him down. The defendant said "I got up and I said 'you're larger than I am and a better man and I will take it' and I turned to go home." He testified further that he had

walked away thirty or forty feet when the deceased over-
took him, caught hold of his coat, threatened to cut him
and "popped his knife in me," and that he then cut de-
ceased because he was afraid of deceased and to save his
own life.    That Bill Roberts walked up to where they
were fighting and pushed them apart.    The testimony of
the defendant tends to show that he was not the aggressor
in bringing on the difficulty; on the contrary he was mak-
ing an effort to avoid further trouble with deceased, and
if upon being separated the defendant saw that he had
seriously wounded deceased and immediately made an ef-
fort to secure the services of a physician to care for the
wounded man, he should have been permitted to testify
to his acts as throwing some light upon the question as
to who was the aggressor, and his state of mind during
and immediately after the difficulty.    However, the error
was harmless because the defendant during his cross-ex-
amination testified without objection that "I turned and
went to Elbert O'Briens to phone for the doctor."    Bill
Roberts also testified that  he said  to defendant, "John
you cut him, go after the doctor for him, you and John
Hawkins, and John commenced crying and said 'I had it
to, but I can't do it;' and I said 'Well God damn it, go
and get him,' and he turned and went after the doctor,
went off in a trot."

The seventh assignment of error  is  based upon the
refusal of the court to grant the motion for a new trial
because the verdict is not supported by the evidence and
is contrary to law.    It would serve no good purpose to
discuss all the evidence.    The defendant admitted that
he inflicted the wounds that resulted in the death of the
deceased, claiming that he acted in self defense.    There
were no eye-witnesses to the difficulty except the two
defendants, each of whom testified.   The State produced

several witnesses who testified to the conduct of deceased and defendant and that defendant a very. short time before the fatal encounter was angry—had his knife in his hand cursing and threatening to fix some one tonight—and other circumstances pointing to the guilt of the accused. It has been held by this court in a long line of decisions, "The refusal of the trial court to grant a new trial for insufficiency of evidence to sustain the verdict, or because the verdict is contrary to evidence, will not be reversed, unless after allowing all reasonable presumptions of correctness the preponderance of the evidence against the verdict is so decided as to clearly convince the appellate court that it is wrong and unjust." Smith v. State, 65 Fla. 56.

No reversible error having been made to appear, the judgment must be affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J. concur.

WEST, J., disqualified.