KANNER, Acting Chief Judge.
The jury found George Washington guilty of murder in the second degree and the court below sentenced him to twenty years in the state prison. He advances this appeal upon the propositions that the court improperly admitted hearsay testimony and that the state failed to prove the corpus delicti.
*652 The wife of the appellant, Myrtle Jones Washington, was the victim of the crime charged against George Washington. On January 30, 1959, between 5:30 and 6:00 p.m., Myrtle was shot and killed in their home in Pierce, Florida. The record shows that, besides the appellant and Myrtle, several persons were present at or near the Washington home on the fatal afternoon during the stated time. These included the witness, Maurice L. McLendon, the witnesses Akines and Williams, who at the time were sitting on the Akines front porch located forty to fifty feet from the Washington abode, and the witness Stephenson. Their testimony elucidates certain significant phases of the homicide here concerned.
McLendon testified that he went to the Washington home during the indicated time to collect monies owed him by the couple and heard a noise as he approached the house as if there was a “fuss going on.” Upon knocking at the door, he heard Myrtle say, “George, there’s the St. Petersburg man,” referring to McLendon. She then came to the door and stated, “George has been drinking and is waiving (sic) an old pistol. I will catch you next week.” Then Myrtle said, “George, get back in there. Don’t go out there. That’s a white man; he will kill you.” McLendon never saw anyone at the Washington home other than Myrtle. He had started away from the Washington home toward the Akines home, wheii he heard a shot and a sound as- of someone falling. He proceeded to his automobile and departed the scene. The statements by Ivlyrtle Washington to the witness McLendon are the ones objected to by the appellant as being, not a part of the res gestae, but hearsay.
Akines and Williams each testified that they heard the shot and the sound of a fall coming from George Washington’s house, immediately prior to which they heard Myrtle call out the name of her husband, “George.” Williams, within a few minutes of the sound of the shot, left the Akines home, saw George Washington appear on his porch, and heard him request that he tell a certain person to “come right away.” Williams departed on his errand, and Akin-es proceeded to the Washington home, went inside, and was met at the door of the front room by George Washington, who requested him to “Take my gunbut seeing Myrtle lying in the middle of the floor, Akines refused to take the weapon. Myrtle had nothing in her hands, there were no weapons in' the vicinity of her body, and no one else was present at the Washington home. In about forty-five minutes Williams returned, saw Washington in the back yard of his home, assisted two other people in removing Myrtle’s body, observed an injury to her eye, and helped transport the body to the constable in Mulberry, Florida, who in turn took it to the City Hospital in Bartow, where Myrtle was pronounced dead.
The witness Stephenson testified that he heard the sound of a pistol shot coming •from Washington’s house during the stated time, went there, and upon entering, saw Myrtle’s body lying beside the bed, observed •a wound near her eye, and saw no weapons near her body. He, together with Williams, Akines, and another person transported the body to the constable. At the hospital .in Bartow, a bullet wound over Myrtle’s right eye was probed in order to determine the course of the projectile. Stephenson testified that when he returned to Pierce, he saw appellant sitting handcuffed in the constable’s automobile in front of the Washington house and there had conversation with him. Washington then denied that he had killed Myrtle. Stephenson inquired as to the gun with which Myrtle had been killed, and appellant stated that it was “somewhere by James Akines.” Stephenson, together with others, was present when the constable discovered the gun in the Akines back yard, buried in a worm bed beneath a piece of tin or wood. The constable examined Myrtle’s body and found no wounds other than the one over her right eye, later saw her body in the *653 funeral home where she was taken after having been pronounced dead at the hospital.
George Washington did not testify, nor anyone on his behalf. The only testimony purporting to show denial by Washington that he killed his wife was contained within the narrative of the witness, Stephenson, who stated that he asked appellant if he killed her and Washington answered, “Naw.”
To support his position that the statements of Myrtle to the witness McLendon were not a part of the res gestae but were hearsay, appellant points out, primarily, that McLendon did not see George Washington nor recognize his voice. Against this, the state insists that the statements of the deceased were made immediately prior to the commission of the crime and so connected with it as to be admissible as part of the res gestae. Moreover, it says, the discourse in which the objected to statements occurred was a three-way conversation within the hearing of the appellant. It is pointed out that, although McLendon did not see Washington, he heard “talking” and heard Myrtle address “George”, both from inside the house and after she appeared at the door; and part of her conversation when she was at the door was addressed to McLendon where he stood on the steps, and the other part was addressed to “George”, who was inside the house.
According to Underhill’s Criminal Evidence, Fifth Edition, section 266, p. 664, “Res Gestae,” is a Latin term translated literally as “things done”; and it embraces the circumstances, facts, and declarations which are incident to the main fact or transaction and which are necessary to demonstrate its character. It also includes words, declarations, and acts so closely connected with a main fact in issue as to com stitute a part of the transaction.
Statements or acts of the injured person made or done at a time immediately ■ prior to the offense or so near to it as to preclude the idea of forethought, and tending to elucidate a main fact in issue may be admissible as part of the res gestae. 22 C.J.S. Criminal Law § 672, p. 1063. Further, the rule is well recognized that statements, exclamations, acts, and conduct of the injured person at a time substantially contemporaneous with the offense and so connected with the crime as to have a relevant bearing on it may be held admissible as part of the res gestae, whether they incriminate the accused or exonerate him. 22 C.J.S. Criminal Law § 670, p. 1059. In the “Syllabus by the Court” in Goff v. State, 1918, 75 Fla. 87, 77 So. 877, it is stated:
“All declarations and acts of the parties to a transaction which are contemporaneous with and accompany it, and are calculated to throw light upon the motives and intention of the parties to it, are admissible as parts of the res gestae. A more liberal statement of the rule as announced by many recent decisions is that, not only such declarations and acts as accompany the transaction are admissible as parts of the res gestae, but also such as are made or performed under such circumstances as. will raise a reasonable presumption that they are the spontaneous utterance or act created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they were the result of premeditated design.”
Of course, statements' or acts which are disconnected in point of time or otherwise with a main litigated fact are not admissible as part of the res gestae.
Each case' must depend upon its own facts and circumstances in the application of the res gestae rule, and the duty is imposed upon the trial court to exercise sound judicial discretion in determining whether or hot the facts and circumstances bring the offered evidence within that rule. Goff v. State, supra.
*654 We are not concerned with a past transaction, statement, declaration, or act where an appreciable period of time intervened. Here the utterances of Myrtle Jones Washington to the witness McLen-don were made immediately prior to the shooting. The circumstances lead only to the conclusion that these statements did not result from any forethought or premeditation. Notwithstanding the objected to statements, however, the other testimony clearly and unerringly established that appellant was the only person in the house other than the deceased, that he had a gun, and that there was no weapon in the vicinity of the deceased’s body. We conclude that the trial judge committed no error in the exercise of his judicial discretion.
As to the question of proof of the corpus delicti, this court pointed out in Freeman v. State, Fla.App.1958, 101 So.2d 887, 888:
“The term ‘corpus delicti’ connotes the body of the offense, or, otherwise stated, the substance of the crime. 26 Am.Jur., section 6, p. 159. As applied to homicide cases in the Florida jurisdiction, the corpus delicti consists of three essential ingredients: (1) the fact of death, (2) the existence of the criminal agency of another person as the cause of death, and (3) the identity of the deceased. Hulst v. State, 1936, 123 Fla. 315, 166 So. 828; Deiterle v. State, 1931, 101 Fla. 79, 134 So. 42, and Lee v. State, 1928, 96 Fla. 59, 117 So. 699.”
Appellant does not argue that failure of the state to establish the corpus delicti existed as to the fact of death and the identity of the deceased, but he bases his argument on insufficiency of the evidence to prove the criminal agency of another person as the cause of death. He urges that no evidence was presented to prove that the deceased was unlawfully killed, that the appellant was present at the time of her death or that someone else was not present.
Although there was no eyewitness to the shooting, the evidence abundantly establishes that it was the criminal act of violence perpetrated by the appellant which caused the death of his wife, Myrtle. We therefore leave undisturbed the jury’s verdict and the judgment and sentence imposed by the trial court.
Affirmed.
BARNS, PAUL D., and STEPHENSON, GUNTER, Associate Judges, concur.