222 So.2d 797 (1969)
Don SADLER, Appellant,
v.
STATE of Florida, Appellee.
No. 68-527.
District Court of Appeal of Florida. Second District.
May 16, 1969.
*798 Robert E. Jagger, Public Defender, and James L. DeMoully, Asst. Public Defender, Clearwater, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
PIERCE, Judge.
In this case appellant Don Sadler appeals a judgment of conviction for first degree murder with recommendation, and sentence to life imprisonment.
The Pasco County grand jury, on July 29, 1968, returned an indictment against Sadler into the local Circuit Court charging him with the offense of murder in the first degree. The Court granted motions of the defendant for discovery and for a list of witnesses. The Court also granted defendant's motion to suppress "any and all statements, oral or written, made by the said defendant while in custody, and all physical evidence obtained as a result of said statements".
The case was set for trial for August 19, 1968, but on August 16th defendant orally moved for a continuance. This motion for continuance was renewed on August 22nd, but was denied and defendant went to trial. The jury convicted him and he was sentenced as aforesaid. Sadler has appealed to this Court.
Defendant Don Sadler was charged and convicted of killing his wife, Diane Bunch Sadler, in the home of his brother, Alton Sadler and his wife Ernestine, by stabbing her in the heart with a knife. The defense put on no testimony. The sufficiency of the evidence to sustain the verdict is not challenged.
The stabbing of Diane occurred shortly before midnight on the evening of July 9, 1968, at his brother's home on the Old Trilby Road, just off State Road 575 in Pasco County. Diane died almost at once. Upon being called, deputy Sheriff Bob Long was at the home in a matter of minutes and found Don being held on the floor by his bother Alton. This was about four minutes past midnight. Diane was already dead in the back bedroom where the stabbing had taken place. Don was immediately taken into custody.
On July 29, 1968, a first degree murder indictment was returned. On August 1, 1968, defendant was arraigned, represented by the Public Defender's office, and pleaded not guilty. The case was set for trial on August 19, 1968, and the Court announced it would "appoint additional counsel". On August 22nd defense counsel filed a motion for continuance, setting forth that on August 14th a preliminary hearing in the case had been held and on August 19th counsel had been furnished with the 190-page transcript of testimony so taken, but that counsel had "not completed a thorough review of this testimony". The motion further stated that certain depositions taken on August 16th would not be transcribed and ready for delivery until the evening of August 21st and that counsel "would require additional time to review the above testimony and to determine what additional investigation and research is necessary in preparation of the trial". The motion was denied and the ruling thereon is assigned here as error.
There was no error in denying the continuance. Counsel presumably was present when the preliminary hearing was held on August 14th and also when the deposition was taken on August 16th, and for all the record shows was thoroughly and personally conversant with the testimony taken on the two occasions. And *799 counsel had the advantage of the two transcripts at the trial.
Defendant obviously was not prejudiced in presenting his case at the trial because he produced no testimony, not even his own. And the record filed here, containing the extensive testimony of eight State witnesses, both direct and cross, shows that the right of cross-examination of these witnesses was in no way impaired. No complaint was made during the trial as to any disability of counsel with respect to any witness or of being hampered in any way in preparation for trial. The vague language of the motion that counsel needed "additional time to review the testimony" and to decide about "additional investigation and research" is far lacking in specifics to make the requisite showing necessary to demonstrate error in denying a motion for continuance. Such motions are always subject to the sound discretion of the Court and a reversal will never be predicated upon a denial in the absence of an affirmative showing of an abuse of discretion. Defendant here has not sustained such burden.
It is also contended that the trial Court erroneously refused to charge the jury on the crimes of assault with intent to commit a felony, aggravated assault, assault and battery, and simple assault, all of which are said to be "lesser included offenses of homicide". The trial Judge did appropriately instruct the jury as to all degrees of murder, manslaughter, justifiable homicide, and excusable homicide, all having to do with the death of the victim. This was proper. The indictment charged a death, and the proof established that the victim here, Diane, died almost instantly from a knife stabbed into her heart. It is not questioned that a homicide took place. The instructions questioned by defendant were not necessarily included in murder, or lawful or unlawful homicide.
Defendant cites the case of Brown v. State, Fla. 1968, 206 So.2d 377, but we do not believe the Supreme Court in Brown meant to say that, in a first degree murder case, as distinguished from a case charging robbery, arson, etc., the trial Judge should charge on otherwise substantive minor offenses such as simple assault, assault and battery, aggravated assault, or assault with intent to commit a felony, on the theory that the latter are all lesser included offenses of first degree murder.
What the trial Court was concerned with in the instant case was to properly and sufficiently instruct the jury as to the various degrees of unlawful homicide and of justifiable and excusable homicide. This was in fact pointed out in Brown as follows:
"Crimes divisible into degrees are governed by Fla. Stat. § 919.14 (1965), F.S.A., which provides:
`Determination of degree of offense. If the indictment or information charges an offense which is divided into degrees, without specifying the degree, the jurors may find the defendant guilty of any degree of the offense charged; if the indictment or information charges a particular degree the jurors may find the defendant guilty of the degree charged or of any lesser degree. The court shall in all such cases charge the jury as to the degrees of the offense.'"
The Supreme Court discussed the function of § 919.14 as follows in Brown:
"Section 919.14, applies only to those crimes which are divided into degrees, e.g., unlawful homicide * * *. If an accused is charged with the highest degree of such a crime, the court should charge the jury on all lesser degrees. In this category it is immaterial whether the indictment specifically charges the lesser degrees or whether there is any evidence of a crime of such degree."
What we have here was either unlawful homicide or lawful homicide. The death of a human being at the hands of defendant Sadler was concededly involved. If defendant's contention as to "lesser included offenses" is sound, then the trial Judge *800 would have been required, upon request, to run down the gamut of the criminal lexicon to minor petty offenses such as disorderly conduct or disturbing the peace. This was a death case, not an assault case. We hold there is no merit to this point.
The third and last point urged by defendant here is that the prosecutor in his argument to the jury commented on the failure of defendant to testify in his own behalf. We do not agree.
The portion of the prosecutor's argument in question is the following:
"Let me ask you this: If there was an affair going on between Alton Sadler [defendant's brother], and Diane Sadler, [defendant's wife], and if this Defendant knew about it, and if because of that her death was brought about, do you think that he would come to the house where his wife and her alleged paramour were carrying on and sit around for an hour or so drinking coffee with them? Don't you think that he would have said something to Ernestine when he was in their house about this affair? And Ernestine said she knew nothing about such an affair, and more than that, if Alton Sadler and Diane Sadler were carrying on an affair, would Alton Sadler have brought the woman into his home to live in the same house where his wife of twelve years lived and was living? Would he bring it out into the open before his wife and family if he was carrying on an affair with this woman? Why absolutely not. So, where's the evidence of the affair, and would Ernestine Sadler, if there had been an affair going on, on the night of July 9th of 1968, would she have casually and calmly gone to bed leaving her husband and this woman there together apparently without any concern for what they were doing? Absolutely not."
The particular passage objected to is: "Where's the evidence of the affair * * *" In support of a motion for mistrial, later made in absence of the jury, defense counsel stated that "It could be implied by inference to the jury that the burden is on the defendant to come forward with some evidence in this regard".
We cannot agree that the statement is necessarily subject to such implication or such inference. The prosecutor was talking about the evidence affirmatively adduced at the trial and which he was in the process of arguing. The challenged argument was a legitimate discussion and comment upon the evidence which the jury had heard. No request was made that the Judge direct the jury to disregard the argument. There was not even any objection to the comment when it was made.
Furthermore, and perhaps more importantly, it was defense counsel who injected the possible "affair" between Diane and the defendant's brother Alton in cross-examination of the witness Nora Sadler. And later during the closing argument to the jury defense counsel again alluded to such a possible affair. So actually the prosecutor's argument in question was reasonably justified in any event.
But as first above mentioned, there was nothing in the prosecutor's argument here challenged that necessarily suggested to the jury that defendant should have produced any testimony showing misconduct on the part of his wife. There is no merit in this point.
The judgment of conviction appealed is therefore 
Affirmed.
LILES, C.J., concurs.
McNULTY, J., concurs in the conclusion only.