250 So.2d 318 (1971)
Paul Louis APPELL, Appellant,
v.
STATE of Florida, Appellee.
No. 70-599.
District Court of Appeal of Florida, Fourth District.
June 21, 1971.
Rehearing Denied July 28, 1971.
*319 Joseph A. Varon, of Varon & Stahl, Hollywood, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Herbert P. Benn, Asst. Atty. Gen., West Palm Beach, for appellee.
WALDEN, Judge.
Defendant was charged with second degree murder in that he did kill John Barnes "with a revolver". Tried by jury and convicted of manslaughter, defendant appeals. Finding harmful errors, we reverse and remand for a new trial.
Defendant and decedent were good friends of long standing and there was no evidence of ill will, malice or bad motive as concerns them. Decedent's mother testified that they were "like brothers" and that she considered both of them her sons.
On January 18, 1970, the defendant was in the process of returning a revolver belonging to decedent when the revolver discharged striking the decedent. He died thirty hours later. The defendant has at all times insisted that the shooting was accidental.
Several points raised by defendant require discussion. Did the trial court under the circumstances err in refusing to charge the jury upon the offense of aggravated assault as a lesser included offense, as requested by defendant? We think it did and that the refusal was harmful error.
The definitive Florida case on lesser included offenses is Justice Thornal's opinion in Brown v. State, Fla. 1968, 206 So.2d 377. He discusses four classes of lesser included offenses. They are:
"(1) Crimes divisible into degrees.
"(2) Attempts to commit offenses.
"(3) Offenses necessarily included in the offense charged.
"(4) Offenses which may or may not be included in the offense charged, depending on the accusatory pleading and the evidence."
*320 In the present situation categories 1 and 2 are excludable immediately. Category 3 is not applicable when it is considered that aggravated assault includes the use of a deadly weapon and this doesn't always occur in murder. In expanding on category 4, Justice Thornal says:
"* * * In this category, the trial judge must examine the information to determine whether it alleges all of the elements of a lesser offense, albeit such lesser offense is not an essential ingredient of the major offense alleged. If the accusation is present, then the judge must determine from the evidence whether it supports the allegation of the lesser included offense. If the allegata and probata are present then there should be a charge on the lesser offense.
"For example, if a person were charged with `assault with intent to commit robbery', it could not be held as a matter of law (under category (3) above) that `aggravated assault' was a necessarily included lesser offense, although simple assault obviously would be. On the other hand, if the information charged `assault with a deadly weapon with intent to commit robbery', then `aggravated assault'  assault with a deadly weapon  would be a lesser included offense." (Emphasis supplied.)
In the case before us the information charged:
"JAMES W. GEIGER, County Solicitor for the Court of Record of Broward County, State of Florida, charges that PAUL LOUIS APPELL on the 18th day of January, A.D. 1970, in the County and State aforesaid, then and there unlawfully and feloniously, by an act imminently dangerous to another and evincing a depraved mind regardless of human life, but without a premeditated design to effect the death of any particular individual, did kill and murder one John Barnes, a human being, with a revolver, with which said revolver the Defendant then and there shot the said John Barnes, inflicting wounds from which he did languish and die on January 19, 1970, contrary to F.S. 782.04, F.S.A." (Emphasis supplied.)
Looking to the instant circumstances, we see that they fit precisely into category 4 of Brown v. State, supra. The accusatory pleading encompasses aggravated assault and charges the use of a deadly weapon, a revolver. The evidence coupled thereto reflects the essentials of aggravated assault. Thus, we hold that in this case the defendant was entitled to a charge on aggravated assault. Brown v. State, supra; McCullers v. State, Fla.App. 1968, 206 So.2d 30. Contra, Sadler v. State, Fla.App. 1969, 222 So.2d 797; Anderson v. State, Fla.App. 1970, 235 So.2d 738, and Brown v. State, Fla. 1971, 245 So.2d 68. We do not agree that Brown v. State, supra, applies only to the crime of robbery.
Going back to the facts, the decedent's mother visited her son in the hospital about two hours following the shooting. He in no way indicted the defendant but expressed concern that the defendant had been arrested and was being held. He could not understand the reason for this as he stated the shooting was an accident.
Defendant's counsel, in his opening statement to the jury, promised to introduce such exculpatory statements made by the decedent on his death bed. However, the trial court, based on the state's objections, refused to allow same into evidence on the basis that they were hearsay. In its final argument the state strained the bounds of propriety by emphatically commenting, over defendant's objection, upon the failure of defendant to produce these self-same statements and by innuendo suggesting that such failure was dishonest and deceitful.
Now on this appeal defendant contends that such statements were properly admissible as a part of the res gestae and that the argument was reversibly prejudicial. We agree on both facets but need only plumb the first.
*321 Res gestae is an exception to the hearsay rule. It allows the admission of hearsay testimony if the conditions surrounding the testimony supply sufficient safeguards of reliability.
A thorough discussion of these safeguards and of the concept in general can be found in Justice Kanner's opinion in Washington v. State, Fla.App. 1960, 118 So.2d 650, where he said:
"Statements or acts of the injured person made or done at a time immediately prior to the offense or so near to it as to preclude the idea of forethought, and tending to elucidate a main fact in issue may be admissible as part of the res gestae. * * *
"`All declarations and acts of the parties to a transaction which are contemporaneous with and accompany it, and are calculated to throw light upon the motives and intention of the parties to it, are admissible as parts of the res gestae. A more liberal statement of the rule as announced by many recent decisions is that, not only such declarations and acts as accompany the transaction are admissible as parts of the res gestae, but also such as are made or performed under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance or act created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they were the result of premeditated design.'" [Goff v. State, 1918, 75 Fla. 87, 77 So. 877.] (Emphasis supplied.)
See also Foster v. Thornton, 1936, 125 Fla. 699, 170 So. 459, and 13 Fla.Jur., Evidence §§ 269-279, Res Gestae.
A statement admissible as res gestae must be spontaneous, made with little or no opportunity for reflection. There are no set criteria  each case is judged on its peculiar facts. Florida, while not stable in its allowance of res gestae, does follow a liberal rule concerning its admittance. Lambright v. State, 1894, 34 Fla. 564, 16 So. 582, and Atlantic Coast Line Railroad Co. v. Shouse, 1922, 83 Fla. 156, 91 So. 90.
Four main factors should be evaluated in searching for a decision on spontaniety and therefore on the admission of res gestae. They are, as discussed in 53 A.L.R.2d 1245, Annot.  Motor Vehicle Accident  Res Gestae, 1) the time gap between the statement and the accident, 2) the voluntary nature of the declaration, 3) the self-serving nature of the statement, and 4) the declarant's physical and mental condition at the time of the statement.
1. Time is quite important. Naturally the more time elapsing, the less chance of a spontaneous reflection on the occurrence. Periods of up to a day have been held not to preclude spontaniety, while other cases have held several minutes to be too long. See 13 A.L.R.3d 1114, Annot.  Res Gestae  Cause of Fire. Florida cases also exhibit wide variations. The feeling is that the factual situation in each instance will set its own pattern of time. State v. Williams, Fla. 1967, 198 So.2d 21; Johnson v. State, 1912, 63 Fla. 16, 58 So. 540.
In the present case decedent was shot around 7:30 p.m. Decedent's mother was notified immediately and she saw her son at the hospital around 9:30 p.m. She said, "I got in to see him first." One of the investigating officers confirmed decedent hadn't been interviewed before 9:30. He said he was told decedent had already died. There was no outside influence exerted on decedent. His statements to his mother were undistorted and still very much part of the occurrence.
2. The time span alone won't make the statement within or without the res gestae. But the comparatively short time in combination with a lack of other factors mitigating spontaniety, would, and do, substantiate a finding of res gestae.
Decedent's statement to his mother was volunteered. The record reflects that he *322 asked the questions, not his mother. He was very concerned and disturbed about his best friend's, appellant's, fate. He certainly received no prompting.
3. Without a doubt neither decedent's statement nor his mother's testimony concerning it could be self serving to either of them. Decedent was never charged with any criminal activity. He wasn't trying to save his own neck. He was spontaneously trying to vindicate his best friend. His declaration was, if anything, the opposite of what would be expected of a gravely injured man. The natural reaction would be to place blame, not proclaim innocence.
4. Decedent was very seriously wounded as he must have been aware. He died less than thirty hours after being shot. He was not inclined to be flip. He was serious about his concern for appellant. There was no time for reflection, he reacted  his best friend was being unjustly accused  he must protect him.
For the foregoing reasons decedent's statement to his mother should have been admitted as part of the res gestae. It was reversible error not to do so in light of the compelling exculpatory character of the statements.
Because of the holdings above which require reversal we shall not discuss in depth the remaining points raised by defendant. However, since the defendant must be retried, we do mention one point which may recur.
Here the standard charge on manslaughter was varied and modified, without explanation. Under the Supreme Court's ruling In the Matter of the Use by the Trial Courts of the Standard Jury Instructions in Criminal Cases, promulgated May 27, 1970, and found in 240 So.2d 472, at page 473, if the trial judge decides a standard instruction is erroneous or inadequate and he modifies or amends it, as was done here, "the trial judge shall state on the record or in a separate order the respect in which he finds the standard form erroneous or inadequate and the legal basis of his finding."
The judgment is reversed and the case remanded for a new trial consistent with the views herein expressed.
Reversed and remanded.
REED and OWEN, JJ., concur.