198 So.2d 21 (1967)
STATE of Florida, Petitioner,
v.
Leroy WILLIAMS, Respondent.
No. 35681.
Supreme Court of Florida.
April 12, 1967.
Rehearing Denied May 17, 1967.
Earl Faircloth, Atty. Gen., and William D. Roth, Asst. Atty. Gen., for petitioner.
Lester Bales, Jr., Zephyrhills, for respondent.
ROBERTS, Justice.
We here review by conflict certiorari the decision of the District Court of Appeal, Second District, in Leroy Williams v. State, 188 So.2d 320 (Fla.App. 1966).
Williams was convicted of murder in the first degree with recommendation to mercy for the murder of Percy A. Mong, during the commission of a robbery in which he was the sole participant; he was subsequently sentenced to life imprisonment.
Upon appeal by the defendant from the conviction and judgment, three assignments were considered serious by the appellate court: "(1) Admission into evidence of the statement made by Mr. Mong to witness, Mrs. Oliver; (2) admission into evidence of defendant's confession; and (3) permitting unintroduced and incriminating physical objects to be displayed in the courtroom in the sight of the jury for three days, and then being `withdrawn' by the state, after the state had first tacitly assured the court the same would be later introduced into evidence." The District Court held that timely objections had been made regarding such questions and reversed for a new trial on all three assignments.
The only question presented by the petition for writ of certiorari and argued by the parties is: "Does the opinion of the District Court conflict with the principle and application of the case of Washington et al v. State (1923), 86 Fla. 533, 98 So. 605?" This question involves only assignment of error number (1), supra. Jurisdiction was taken by this court because of conflict with the cited case and because the same rule of law under substantially the same facts produced a different result. Nielsen v. City of Sarasota, Fla. 1960, 117 So.2d 731.
The facts as presented by the petition for writ of certiorari and brief of the state, adopted by the attorney for respondent and borne out by the record, reveal that "* * * Percy A. Mong, the deceased was an elderly man who owned and operated a grocery store located about seven miles *22 from Dade City, Florida. Sometime between 8:30 and 9:00 on the morning of January 8, 1965, Mrs. Oliver, a neighbor of Mr. Mong, heard two sounds like firecrackers exploding coming from the direction of the Mong grocery. Mrs. Oliver paid no particular attention to the sound but did notice that immediately thereafter a green and white Chevrolet automobile, driven by a young colored man alone in the car, drove away from the direction of the store at a high rate of speed. Thereafter, Mrs. Oliver got into her car and drove next door to the grocery store to check on Mr. Mong, which was her custom before leaving the vicinity. She stopped and parked the car outside the store, went to the front door, pushed it open and called to Mr. Mong a couple of times but received no response. Fearing that something might have happened, she ran to a neighbor's home on the other side of the Mong residence, called to a neighbor and upon getting no response returned to the store. Thereafter, Mrs. Oliver opened the front door and went in and called Mr. Mong. At first, there was no sound, but when she called him a second time, she heard a groan or moan at the rear of the store. Upon investigation she found Mr. Mong lying behind the counter with his head and shoulder on a stack of paper bags. At this point, Mrs. Oliver inquired: "What happened, Mr. Mong?" He replied, "A man tried to rob me, I have been hurt," and then, "I need help." As stated in the opinion of the appellate court, the testimony revealed that Mrs. Oliver estimated that it was from five to eight minutes between the time she heard the original "firecracker sound" and the conversation with Mr. Mong.
In Washington v. State, supra, immediately after the shooting the victim proceeded to the home of his aunt some seventy or a hundred yards distance. Upon approaching the house the aunt asked: "Henry, what's the matter?" The response was: "Auntie, Randolph Washington and his old uncle, Rufus Thompson, doubleteamed me out there a while ago; Rufus struck me in the head with a bottle and Randolph shot me." Assignments of error were to the effect that this testimony of the deceased was not admissible as part of the res gestae and should have been stricken. The court there, citing persuasive authority, held:
"It is often difficult to determine when declarations having relation to an act or transaction should be considered as part of the res gestate, and an equally great difficulty has been experienced in the effort to prescribe general rules for the admission of such. It may, however, be safely said that declarations which were the natural emanations or outgrowths of the act or occurrence in litigation, although not precisely concurrent in point of time, if they were yet voluntarily and spontaneously made so nearly contemporaneous as to be in the presence of the transaction which they illustrate and explain, and were made under such circumstances as necessarily to exclude the idea of design or deliberation, must upon the clearest principles of justice, be admissible as part of the act or transaction itself."
We think that the principle as enunciated in Washington et al. v. State, supra, is as clear and concise as a rule of law on such a complicated issue can be. The factual situation in the case sub judice is analogous and on consideration of the record it does not appear that any fundamental right of the defendant was impaired by the remarks of Mrs. Oliver and no reversible error was therefore committed. "Each case must depend upon its own facts and circumstances in the application of the res gestae rule, and the duty is imposed upon the trial court to exercise sound judicial discretion in determining whether or not the facts and circumstances bring the offered evidence with that rule." Washington et al. v. State (Fla.App. 1960), 118 So.2d 650. For the same general rule regarding declarations as a part of the res gestae and regarding the role of the trial court in determining *23 admissibility see Goff v. State (1918), 75 Fla. 87, 77 So. 877. [Despite comment to the contrary it appears to us, as it did to the trial court, that the offenses here were related and the occurrences were part of the res gestae. Cf. Raulerson v. State (Fla. 1958), 102 So.2d 281.]
We have carefully examined the authorities and especially the three Florida cases cited by the District Court: Lambright v. State (1894), 34 Fla. 564, 16 So. 582; Vickery v. State (1905), 50 Fla. 144, 38 So. 907; and Green v. State (1927), 93 Fla. 1076, 113 So. 121; and do not find them in conflict with Washington et al. v. State, supra, or our holding here. In the Lambright case the deceased had been shot between 8:00 or 9:00 o'clock at night and the remarks held inadmissible were not made until nearly 9:00 the next morning at which time he expressed the opinion that he would recover. The court held,
"It may be inferred from the circumstances that he was in a helpless condition, and was unable to get up and open the door of his house when parties called in the morning; but still there is no sufficient showing, in our judgment, to reasonably exclude the presumption that any statement made by him so long a time after he was shot was from deliberate design. His statement, under the circumstances, would be the narration of a past transaction without sufficient connecting circumstances to characterize it as a spontaneous utterance or necessary incident of the transaction, and preclude the idea of deliberation or design."
In the Vickery case, supra, the court excluded the remarks under attack and held that the transcript failed to disclose what transpired between the shooting and the time to which the questions relate, so as to show that the supervening circumstances, including the statements inquired about, were all the product of, and a part of, the difficulty itself.
The statement of the victim in the Green case, supra, "* * * sometime after he was shot" that, "We come here to get him, and he has got me, but I am not dead, though. Van he didn't stick to me like he said. He has got to do it over" was deemed inadmissible, the court holding, "* * * the narrative, [was] not of that transaction, but of some other, which is probably supposed to have some kind of bearing upon the killing."
In the cause under review there was no question of what transpired between the shooting and the statements. The response of the victim was in direct reply to, and a natural emanation or outgrowth of, the question of what had happened. It was a necessary incident to explain the victim's condition, was so logical a comment as to exclude the idea of design or deliberation; and it was substantially contemporaneous with the offense. Under these circumstances we see no reason why the District Court or this court should usurp the obligation of the trial court in determining whether the evidence was within the res gestae rule. Therefore, that part of the opinion which holds inadmissible the testimony of the witness, Oliver, and the pronouncements of law pertaining thereto is expunged.
The District Court considered three assignments of error but the second and third were not presented here for review, not briefed and not argued; we must therefore assume they were abandoned, and will not be reviewed here. These assignments do not involve fundamental error or capital punishment. See Rule 3.7(i), F.A.R.; Rule 6.16(b) F.A.R., 31 F.S.A.; Compare F.S. 924.32 F.S.A.; Anglin v. Mayo (Fla. 1956), 88 So.2d 918; State v. City of North Miami Beach (Fla. 1959), 108 So.2d 764; City of Miami v. Steckloff (Fla. 1959), 111 So.2d 446; Roberts v. State (Fla. 1966), 181 So.2d 646.
Accordingly, that part of the opinion holding inadmissible the testimony of the witness Oliver is expunged, and without considering the other assignments of error which we hold to have been abandoned but *24 which rulings by the District Court support the decision of that court granting a new trial, the writ of certiorari is discharged.
It is so ordered.
THORNAL, C.J., and THOMAS, DREW and O'CONNELL, JJ., concur.