237 So.2d 61 (1970)
Nancy W. WAKEMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 2629.
District Court of Appeal of Florida, Fourth District.
February 20, 1970.
Rehearing Denied June 29, 1970.
As Modified on Denial of Rehearing June 29, 1970.
Joseph D. Farish, Jr., of Farish & Farish, West Palm Beach, and Max B. Kogen, Miami, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Charles W. Musgrove, Asst. Atty. Gen., West Palm Beach, for appellee.
McCAIN, Judge.
Defendant appeals from an order of probation entered after a jury found her guilty of aggravated assault with a recommendation of mercy. We reverse.
*62 Upon arriving at defendant's home at about 12:45 a.m. a police officer found her husband lying on the floor of the bedroom with blood on his pajama tops. In response to the officer's question, the victim said the defendant had shot him.[1] At this point defendant was not put under arrest but the police officer testified he would not have allowed her to leave.
The defendant had apparently been beaten and was in an intoxicated condition.[2]
The victim accompanied by defendant and police officers was taken to a hospital where defendant was placed under arrest. At that time, a discussion was held between defendant and the officers about obtaining a lawyer for her, but no effort was made to contact one.
The officers and defendant then proceeded to the police station where defendant was asked who her attorney was. She told them his name and requested that they contact him but the officers were unable to locate him. The police interrogator knew of her desire for an attorney and another officer attempted to contact various ones she approved of from those selected from the "yellow pages" of the telephone directory. Her present attorney of record was reached and he advised the officer he would immediately come to the station.
During this interim she was questioned, advised of her rights and signed a waiver thereof. In addition she signed a confession.[3] The officers stated this was done to "expedite" the case.
Shortly after the questioning was completed and the confession was signed, defendant's attorney arrived.
Under these circumstances, defendant's confession was obtained in derogation of her Fifth Amendment protection against self-incrimination and her Sixth Amendment right to counsel.
In Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, the court stated:
"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning."
and further:
"If * * * he indicates in any manner and at any stage of the process that he wishes to consult with an attorney there can be no questioning."
As soon as the officers became aware of defendant's desire to have an attorney present, no questioning should have transpired until he arrived.
In Craig v. State, Fla.App. 1968, 216 So.2d 19, we found that a defendant who, during preliminary questioning, stated that "in a way" he would like to have had an attorney but concluded that he did not "see how it can help me", should have been given an opportunity to consult with one or a clear and unequivocal waiver should have been obtained from him.
Defendant herein was in simply no condition to waive her right to counsel and her privilege against self-incrimination. We cannot find she intelligently and understandingly waived them which results in our conclusion that defendant's confession was erroneously introduced into evidence.
*63 Since the defendant was deprived of her freedom of action before the "Miranda warnings" were given, all evidence secured from her through police interrogation must be excluded.
We have considered defendant's other point questioning the introduction of the victim's utterance as a res gestae statement and find it to be without merit. See State v. Williams, Fla. 1967, 198 So.2d 21.
Consistent with the views expressed herein, this cause is reversed and remanded for a new trial.
Reversed and remanded.
CROSS, C.J., and SAMPLE, WALLACE, Associate Judge, concur.

ON REHEARING
McCAIN, Judge.
Defendant's petition for rehearing prompts us to further consideration of the admissibility of the victim's utterance as a res gestae statement.
Police officers arrived at defendant's home at approximately 12:45 a.m. on September 4, 1967. They came to render aid and were unaware that any offense had been committed. Defendant's husband was found lying on the bedroom floor with blood on his pajama tops. In response to an officer's inquiry as to what happened, the victim stated the defendant, his wife, had shot him. Not more than fifteen minutes had lapsed from time of a phone call to the police station, which dispatched the officers to the scene, and the statement. The defendant was present in the bedroom, apparently beaten, was intoxicated and wobbly on her feet.
Unanswered is when the shooting actually happened and the events that occurred between the shooting and arrival of the police. At time of trial, the victim invoked his Fifth Amendment right not to testify and the defendant chose not to take the stand.
Originally, we concluded that State v. Williams, Fla. 1967, 198 So.2d 21, would qualify the victim's statement as a res gestae declaration and therefore entitle it to be admissible, but we now recede from this position.
In Williams not more than 5-8 minutes lapsed before the res gestae statement was made by a store owner and victim of a robbery. The witness to the statement observed a man leaving the store and driving away at a high rate of speed. Upon going to the store, the witness called but received no response. She then ran next door but no one was home. Returning she again heard no noise from the store, but upon entry she heard a moan and found the victim. Upon inquiry as to what happened the victim responded. In holding his statement admissible, the court said:

"In the cause under review there was no question of what transpired between the shooting and the statements. The response of the victim was in direct reply to, and a natural emanation or outgrowth of, the question of what had happened. It was a necessary incident to explain the victim's condition, was so logical a comment as to exclude the idea of design or deliberation; and it was substantially contemporaneous with the offense." (Emphasis supplied.)
In Vickery v. State, 1905, 50 Fla. 144, 38 So. 907, the Supreme Court determined certain comments were inadmissible and stated:
"The defense introduced three different witnesses, and asked each one of them to testify whether or not, within the next four, five, or ten minutes after the shooting, the deceased stated to the witness who shot him, and whether the man who shot him had two legs, and whether or not the defendant shot him. The state attorney objected to the questions as seeking hearsay testimony. The objection was sustained, and the defendant excepted. The transcript does not disclose what transpired between the shooting and *64 the time to which the questions relate, so as to show what the supervening circumstances, including the statements inquired about, were all the product of, and a part of, the difficulty itself. In the absence of such showing, the questions objected to cannot be held to relate to declarations which were produced by the occurrences to which they relate, but, rather, that they relate to a retrospective narration of them, and they were therefore properly excluded." (Emphasis added.)
The difficulty inherent in determining whether a statement comes within the res gestae rule is alluded to in Washington v. State, 1923, 86 Fla. 533, 98 So. 606, wherein the court stated:
"Immediately after the shooting the deceased proceeded to the home of Lillie Walker, about 70 to 100 yards distant; on approaching the house Lillie Walker propounded the following question: `Henry, what's the matter?' The response was: `Auntie, Randolph Washington and his old uncle, Rufus Thompson, doubleteamed me out there a while ago; Rufus struck me in the head with a bottle and Randolph shot me.'
"* * *.

"It is often difficult to determine when declarations having relation to an act or transaction should be considered as part of the res gestae, and an equally great difficulty has been experienced in the effort to prescribe general rules for the admission of such. It may, however, be safely said that declarations which were the natural emanations or outgrowths of the act or occurrence in litigation, although not precisely concurrent in point of time, if they were yet voluntarily and spontaneously made so nearly contemporaneous as to be in the presence of the transaction which they illustrate and explain and were made under such circumstances as necessarily to exclude the idea of design or deliberation, must upon the clearest principles of justice, be admissible as part of the act or transaction itself. * * *
"The answer of the deceased complained of was made within two minutes of the fatal shooting. It does not appear that there was time or motive for the fabrication of a story, and we think the time was so short that it precludes the idea of deliberate design on the part of deceased. In the light of the rule and authorities as above quoted the response of the deceased was a part of the res gestae, and was competent testimony." (Emphasis added.)
We also observe that our Supreme Court in Lambright v. State, 1894, 34 Fla. 564, 16 So. 582, adopts the view that declarations may qualify as res gestae if they are free from having been produced by the calculated policy of the actors.
In this case there are serious questions as to (1) when the shooting occurred, (2) the amount of time lapse between the shooting and the victim's statement, and (3) the supervening events that occurred. In this posture the case does not exclude the idea of design, deliberation or calculated policy being attributed to the statement. Neither does it justify a conclusion that it was the event speaking through the person and not the person talking about the event. This is not a situation where the witness heard the shot or observed someone leaving the house, following which and substantially contemporaneously therewith the declaration was made.
Our attention is also directed to State v. Worley, 1965, 178 Neb. 232, 132 N.W.2d 764, wherein the shooting occurred at approximately 5:00 p.m. The court stated:
"Police officers, Rodman and Sorys, arrived at the scene about 5:30 p.m. When they came into the living room, the defendant was going into the bedroom to the northwest. Lucy was standing by the body in the living room. Officer *65 Rodman was permitted to testify, over objection that it was hearsay, as follows:
`Q. What did you observe about her? A. Well, she was standing there crying and I asked her what happened and she in turn says  Mr. Denenberg: Just a minute, object to any hearsay testimony. The Court: Overruled. Q. You may answer. A. I says, `What happened?" and she says, "He is in the bedroom." At this time, my partner, I said to him, it was either the man who did this or the man who shot him, and she says, "Yes," and she pointed to the bedroom which I had seen the man running in.' * * *
"* * * Nor is it admissible as part of the res gestae. The statement was made after the police officers arrived. There was ample opportunity for reflection and formulation of the content of the statement. The statement could not be considered as the act speaking through the person's words. The elements of lack of premeditation and spontaneity are absent. * * *"
We agree as do most courts that problems exist in this area of limitations upon admissibility of proposed res gestae declarations. Therefore, our conclusion herein is limited to this case and upon its facts. An excellent annotation on this subject appears in 4 A.L.R.3d, commencing at page 149.
We have also considered the statement's admissibility under the theory that it was made in the presence of the defendant who did not respond to it. Would this then qualify it for admission? We think not.
For such a statement to be admissible against a defendant, his silence must have occurred under proper circumstances, inclusive of which is that the statement be made within his hearing and with his understanding. In Handley v. State, 1936, 125 Fla. 632, 170 So. 748, 753, our Supreme Court stated:
"[T]he statement must have been made in a tone loud enough to have been heard by the accused and in the language understood by the accused and while the accused was in the possession of his faculties. * * *"
In 2 Wharton's Criminal Evidence, 12th Edition, § 411, p. 169, it is stated:
"In order that an accused's failure to deny an incriminating statement be permitted to go to the jury so that they may draw an inference as to his acquiescence from his silence, he must have heard the statement and understood that he was being accused of complicity in the crime. When it is shown that the accused was at too great a distance to have heard, or was asleep, or so inebriated as not to have been able to hear and understand, or that he was a foreigner who did not understand the language in which the accusation was made, the evidence is inadmissible."
Thus, in this instance, the defendant's battered condition coupled with her state of intoxication refutes any presumption that she had such full control of her faculties as to hear and understand the charge of her complicity.
For obvious reasons the statement's admissibility as a dying declaration was not urged.
Therefore, we conclude reversible error was committed when the victim's statement was admitted into evidence without a proper predicate having been laid therefor, and that a new trial should be afforded as heretofore opined.
That portion of our opinion rendered on February 20, 1970, in this cause and reading:
"We have considered defendant's other point questioning the introduction of the victim's utterance as a res gestae statement and find it to be without merit. See State v. Williams, Fla. 1967, 198 So.2d 21."
is hereby vacated and withdrawn and to the extent herein stated defendant's petition *66 for rehearing is granted and our opinion is modified to accord herewith. In all other respects our opinion is confirmed and the petition is denied.
SAMPLE, WALLACE, Associate Judge, concurs.
CROSS, C.J., dissents on petition for rehearing.
CROSS, Chief Judge (dissenting):
I would deny the petition for rehearing and adhere to the original opinion.
NOTES
[1] Over defendant's objection the court allowed the victim's response into evidence as a res gestae statement.
[2] Testimony established that she appeared to have a cut on the bridge of her nose, her ear lobe was bleeding, her forehead seemed to be red, and she was wobbly and too intoxicated to drive.
[3] Despite her motion to suppress, it was both admitted into evidence and read to the jury. In essence she stated that: she had an argument with the victim; that he beat her; that she warned him not to hit her again, and that she then shot him in the back.