346 So.2d 639 (1977)
Carl Lee JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 76-596.
District Court of Appeal of Florida, Second District.
June 3, 1977.
Jack O. Johnson, Public Defender, and W.C. McLain, Asst. Public Defender, Bartow, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and C. Marie King, Asst. Atty. Gen., Tampa, for appellee.
GRIMES, Judge.
This is an appeal from a conviction for aggravated battery. Appellant's only point of merit pertains to the admissibility of certain inculpatory statements he made to the police.
Appellant was arrested at 5:00 a.m. in the morning and placed in handcuffs. He was then given Miranda warnings. At the trial, officer Spivey explained what happened next:
"Q Did you ask Mr. Jones if he understood those rights?
A Yes.
Q And what did he respond?
A He said that he didn't want to say anything.
Q Did he eventually say anything?
A Yes, he did.
Q Was that pursuant to your questions?
A Yeah."
The officer later recounted what occurred at the police station:
"Q And would you tell the Judge, please, what if any conversation you had with Mr. Jones at the Bradenton Police Department.
A Yes, sir. I asked did the defendant, did he want to tell his side and he said no, he just wanted to talk to his lawyer. We asked him who his lawyer was and he said Mr. Schultz. I asked him if he wanted to call him and he said, yes. All right, I didn't press the issue. I told him what I had through investigation learned. He said, `No, that's not correct.' He *640 said, `Let me remember now to make sure.'
They had been playing pool and he said that Mr. Cadle had pulled his hair and said it made him mad, that he done it two or three times and he told him to quit but Mr. Cadle didn't do that so he said he went out to his car, got his gun, came back in and shot him. He said although I did not  when I shot him, I didn't run out of the bar. I walked out of the bar.
* * * * * *
Q Now Officer Spivey, he said he wanted to talk to his lawyer. Would you describe to the Court, please, how it is that the questioning continued and how this conversation ensued?
A Yes, sir. I would tell him how I had it for my report. He would say, `That's not correct. It was this way.'
Q Was he volunteering these things to you?
A If I asked him questions, he would say, `I don't choose to answer, sir.' but if I would say something or if I would go on to say how I, through investigation what I had learned; then he said, `No, that's not right. It happened this way.'
Q And so you weren't questioning him?
A Whenever I asked him questions he would say `I don't choose to answer,' and so I would drop that."
The admission of the inculpatory statements over appellant's objection violated the principles of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Miranda court made it clear that when a suspect in police custody indicates that he wishes to remain silent, further interrogation at that time must cease.
We are compelled to reject the state's contention that the inculpatory statement given at the police station was admissible because it was not the product of direct interrogation. No one can seriously doubt that officer Spivey was attempting to obtain incriminating statements when he continued to converse with appellant about the incident after appellant had told him he did not want to talk. In Brewer v. Williams, ___ U.S. ___, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), the U.S. Supreme Court recently quashed some incriminating statements obtained by the police in an equally subtle manner after the suspect's attorney had made it clear that his client did not wish to make a statement.
This is not a case in which interrogation has been terminated at a suspect's request and later resumed under circumstances in which it is apparent that the suspect has changed his mind and desires to make a statement. Rivera Nunez v. State, 227 So.2d 324 (Fla. 4th DCA 1969); cf. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Here, the appellant clearly indicated that he didn't want to talk, and the state failed to meet the heavy burden of showing that he thereafter made a knowing intelligent waiver of his right to remain silent. See State v. Dixon and Godbolt, (Fla. 2d DCA 1977) (Case No. 75-1384, Opinion filed May 4, 1977; Singleton v. State, 344 So.2d 911 (Fla. 3d DCA 1977).
REVERSED and REMANDED for a new trial.
McNULTY, Acting C.J., and OTT, J., concur.