ANSTEAD, Judge.
This is an appeal from a judgment and sentence adjudicating appellant-defendant guilty of manslaughter and grand larceny. Defendant claims that the lower court erred in denying his motion to suppress inculpato-ry statements made by him while he was being transported by police officers from St. Augustine to Fort Lauderdale following his flight from the South Florida area immediately after the alleged crimes occurred. He contends that the statements were improperly elicited from him during the five hour trip after he had specifically advised the officers that he did not wish to make any statements prior to consulting his attorney.
The testimony adduced at the suppression hearing established that two officers of- the Fort Lauderdale Police Department went to St. Augustine to serve an arrest warrant on defendant and transport him to Fort Laud-erdale. Defendant signed a Miranda[1] rights waiver form at the St. Augustine jail prior to being transported but thereafter indicated to the officers that he wanted to speak to his attorney before he answered *748 questions. The police officers were also told by defendant that he would cooperate upon his return to Fort Lauderdale following consultation with his attorney, whom he specifically named.
In St. Augustine the defendant became seriously ill due to his withdrawal from heroin addiction. Prior to departing for Fort Lauderdale, he was taken to a local hospital where he was given a shot of Demerol. On the way to the hospital the defendant repeated his position that he would not give the officers a statement until he spoke to his attorney. In the opinion of the officers, although defendant looked sick, he appeared well enough to make the trip after receiving the shot. The defendant was handcuffed and shackled and placed alone in the back seat of the police vehicle.
During the trip to Fort Lauderdale one of the officers started a conversation with the defendant by asking him how he got to St. Augustine from Fort Lauderdale. The officer candidly admitted that at the same time a tape recorder, hidden from defendant’s view, had been turned on in order to record defendant’s statements about the criminal episode. The defendant was not readvised of his Miranda rights.[2] Subsequently, during the course of the conversation with the officer, defendant did give an inculpatory statement.[3] By the time they arrived in Fort Lauderdale the defendant had taken ill and again advised the officers of his desire to see his lawyer before giving a statement.
The case of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) has become the touchstone of our criminal law regarding a defendant’s right not to be compelled to incriminate himself by his own statements. The Miranda opinion expressly stated that when a suspect in police custody indicates that he does not wish to give a statement prior to consulting his attorney, all interrogation must cease. Jones v. State, 346 So.2d 639 (Fla.2d DCA 1977), Wakeman v. State, 237 So.2d 61 (Fla. 4th DCA 1970). While a defendant may subsequently waive his rights, once he has asserted such a right the state has the heavy burden of proving that any subsequent statement from the defendant is a product of a knowing and intelligent waiver of his right to remain silent and consult an attorney. Cason v. State, 373 So.2d 372 (Fla.2d DCA 1979); Jones, supra; United States ex rel. Sanders v. Rowe, 460 F.Supp. 1128 (N.D.Ill.1978). It is axiomatic that the courts indulge in every reasonable presumption against waiver. Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); Government of Canal Zone v. Gomez, 566 F.2d 1289 (5th Cir. 1978).
The question of waiver is an issue of fact which must be determined upon the circumstances surrounding each particular case. See Rivera Nunez v. State, 227 So.2d 324 (Fla. 4th DCA 1969). Factors to be considered might include the time span between an initial refusal and the subsequent statement; whether the defendant has been readvised of his rights; the location and time of day of the interrogation; the condition of the defendant; the methods employed by police authorities to secure the statement; whether the defendant or the authorities initiated the request for the statement; whether the statement is oral, recorded or in writing or signed by the defendant; and any other circumstances tending to indicate waiver or the absence thereof.
In some cases the evidence of waiver may be clear. For instance, in Rivera Nunez v. State, supra, waiver was found from the following circumstances:
Approximately 30 hours after his arrest, and without having had the advice of counsel appellant was again interrogated *749 by a police officer with the assistance of an interpreter. At that time, and before the interrogation began, appellant was again advised in detail as to his constitutional rights, following which an inquiry was made as to whether appellant wished to waive such rights and make a statement to the officer. The evidence established that on this occasion appellant clearly understood all of his constitutional rights and indicated his willingness to voluntarily waive such rights and to make a voluntary statement concerning his participation in the billing with which he was charged. The statement which appellant gave at that time and under those circumstances was reduced to writing by a typist as the interrogation was conducted, following which the written statement was read by the interpreter to appellant and approved and signed by him. Id. at 324, 325.
A finding of waiver under such circumstances seems apparent. The defendant was specifically readvised of his rights and expressly waived them. On the other hand, in Jones v. State, supra, the Second District held that waiver was not established where it was shown that the police authorities ignored the defendant’s assertion that he did not want to give a statement and wanted to talk to his lawyer, and instead continued to discuss the case with the defendant. The Jones opinion concluded:
We are compelled to reject the state’s contention that the inculpatory statement given at the police station was admissible because it was not the product of direct interrogation. No one can seriously doubt that officer Spivey was attempting to obtain incriminating statements when he continued to converse with appellant about the incident after appellant told him he did not want to talk. In Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), the U.S. Supreme Court recently quashed some incriminating statements obtained by the police in an equally subtle manner after the suspect’s attorney had made it clear that his client did not wish to make a statement.
This is not a case in which interrogation has been terminated at a suspect’s re-: quest and later resumed under circumstances in which it is apparent that the suspect has changed his mind and desires to make a statement. Rivera Nunez v. State, 227 So.2d 324 (Fla. 4th DCA 1969); cf. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Here, the appellant clearly indicated that he didn’t want to talk, and the state failed to meet the heavy burden of showing that he thereafter made a knowing intelligent waiver of his right to remain silent. Id. at 640.
In our view the factual circumstances involved herein are similar to those present in Jones. Defendant twice specifically informed the Fort Lauderdale officers that he did not wish to give a statement until he had talked with his attorney in Fort Lauderdale. Thereafter, the defendant was required to travel for some five hours in a closed automobile with the two officers. He was suffering from severe withdrawal symptoms and required an injection of Demerol to make the trip. During the trip, and contrary to the police officer’s usual procedure in securing a recorded statement,[4] defendant was not read-vised of his rights. Instead, defendant was questioned about his flight from Fort Laud-erdale after the crime and the circumstances of the crime itself. Before initiating the conversation, unbeknownst to defendant, the police officer turned on a tape recorder to record his statements. These circumstances fall far short of demonstrating a knowing intelligent waiver of the defendant’s right to remain silent and to consult with an attorney. To the contrary the circumstances reveal a course of conduct designed to subtly avoid the effect of the defendant’s specific refusal to give a statement. See Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).
In Brewer, the United States Supreme Court held a statement involuntary where it was shown that the statement was given during a conversation initiated by police *750 officers who were transporting the defendant in an automobile after the defendant’s attorney had earlier refused to allow his client to give a statement. Similarly here, the police acknowledged initiating the discussion about the case with the appellant in violation of his earlier refusals to discuss the matter.
If indeed the rule requiring all questioning to cease is to have any meaning at all, it should be applied to prevent questioning when the appellant has clearly indicated that he will not give a statement about the incident until he has consulted with his lawyer. In such instances, some evidence beyond a defendant’s responses to a subsequent police-initiated conversation must be presented to demonstrate a voluntary waiver.
Accordingly, our conclusion is that the state did not demonstrate that defendant waived his rights. That being so, this cause is hereby reversed and remanded for a new trial in accordance with the terms of this opinion.
DOWNEY, C. J., and HERSEY, J., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.694 (1966).

. The officer testified that his usual procedure when recording a statement is to readvise a defendant of his Miranda rights on the tape.

. The officer having the conversation with the defendant testified that he may have supplied the defendant with some of the details of the alleged crime while questioning him. The accompanying police officer testified that the defendant was asked questions about the homicide and when asked what type of questions were being asked replied: “You ask the case on hand.”

. See fn. 2, supra.