DANIEL S. PEARSON, Judge.
We hold that the defendant’s statements, suppressed for the sole reason that the police, in violation of Miranda v. Arizona and its progeny,[1] failed to scrupulously honor the defendant’s assertion of his right to remain silent, are admissible to impeach the defendant despite defense *54 counsel’s claim that in reliance on the trial court’s inadvertent remark that the statements were being suppressed as “involuntary,” defense counsel advised the defendant that the statements could not be used for any purpose.[2]
Reaves was charged with the first-degree murder of one Michael Smith. At trial, Reaves testified that he thought Smith was armed and that during a struggle to prevent Smith from carrying out an earlier threat to harm a female friend of Reaves, Reaves stabbed Smith. On cross-examination, the prosecutor asked:
“Mr. Reaves, did you ever tell anyone that you pulled a knife on Michael Smith because you were angry and that he was harassing you?”
The prosecutor’s question referred to a statement made by Reaves to the police which the trial court had earlier suppressed. Defense counsel, correctly anticipating that the question was a harbinger of impeachment testimony to come, objected to the question on the sole ground that since the court had labeled the statement “involuntary” at the suppression hearing, the statement was inadmissible, not only in the State’s case in chief, but, as well, to impeach the defendant.[3] See n. 2, supra. According to defense counsel:
“I urged that they be suppressed, and your Honor found and used the word, ‘involuntary.’
“That might have been a mistake, but your using the word involuntary, I advised my client that the statements that he made to the police were inadmissible and they were not going to be used.

“... I have a right to rely on what I perceived to be your Honor’s ruling, and if I perceived your Honor’s ruling to be that they were involuntary, I can consider whether I am going to put him on the stand, knowing whether statements made to the police are going to be used or not.
“I am stating, for your Honor’s concern, that I told him, as his lawyer, that the statements that he made to the police would not come into evidence.”
Assuming, arguendo, that counsel for the defendant gave the foregoing advice to his client, the advice was completely unjustified. The motion to suppress was based entirely on the ground that Reaves’ statements were elicited through questioning in violation of Miranda v. Arizona.[4] It is well understood that voluntary statements which are suppressed on the basis of Miranda violations are admissible to impeach the maker of the statement. See Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); Hughey v. State, 411 So.2d 1021 (Fla. 5th DCA 1982). The evidence adduced at the suppression hearing reveals that the questioning of Reaves violated the principles of Miranda v. Arizona, but that his statements were voluntarily made: Reaves first received Miranda warnings upon his arrest soon after the stabbing *55 occurred, and he responded that he did not wish to speak. A short time later, a second police officer, aware that the appellant had said that he did not want to make a statement, began to advise Reaves of his rights again. Reaves interrupted and told this officer that he had already been advised of his rights. The officer then asked Reaves if he wanted to tell him about the stabbing, and Reaves replied that he did it in a fit of anger, and, responding to an inquiry regarding the knife, Reaves said that he had thrown the knife under a car. A third officer, Detective Merritt, readvised Reaves of his Miranda rights en route to the homicide office. Merritt too knew Reaves had earlier been advised of his rights and had said he did not wish to make a statement. Upon arriving at the office, Reaves was taken by Merritt to an interview room and again read his Miranda rights from a printed waiver of rights form. Reaves indicated on the form that he understood his rights and voluntarily agreed to answer questions. No officer threatened Reaves; no promise was made to him; no force was used against him. Detective Merritt then questioned Reaves about the incident. Reaves’ answers to Merritt were held admissible for impeachment purposes:[5],[6]
“The Motion was made. The basis of the motion was that his Miranda rights were violated by questioning him after he exercised his right to remain silent. I granted the motion based on that testimony.
“Now, if you had a question or something like that you could have clarified it....’’
We suspect that clarification was not something defense counsel wanted and that he was satisfied to rely on the trial court’s inadvertent use of the word “involuntary.” That reliance, as we have said, was manifestly unjustified, and if defense counsel, as he stated, told his client that he could testify without fear of impeachment, that misadvice is something between them which will, we are confident, be a matter for resolution another day. In the meantime, the defendant’s conviction is
Affirmed.

. In addition to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which, of course, first announced the rule that the questioning of a person in custody must cease when he asserts his right to remain silent, the defendant relied on Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); Bowen v. State, 404 So.2d 145 (Fla. 2d DCA 1981); Breedlove v. State, 364 So.2d 495 (Fla. 4th DCA 1978), and Jones v. State, 346 So.2d 639 (Fla. 2d DCA 1977), all of which speak to the same proposition.

. Statements which have been found to be involuntary because they have been obtained through coercive tactics, false promises, and the like, are deemed to be so untrustworthy as to be inadmissible for any purpose, including impeachment. See Harris v. New York, 401 U.S. 222, 224, 91 S.Ct. 643, 645, 28 L.Ed.2d 1, 4 (1971) ("It does not follow from Miranda that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards.").

. On appeal, Reaves additionally contends that even if the defendant’s statement were admissible to impeach him, the question, "Mr. Reaves, did you ever tell anyone ..., etc.” (emphasis supplied), fails to establish a proper predicate for the introduction of an impeaching statement. Although the question was certainly subject to the objection of insufficient predicate in that it failed to advise the defendant of "the time and place [the statement] was made as well as the person or persons to whom made,” Nowlin v. State, 346 So.2d 1020, 1025 (Fla.1977) (Over-ton, C.J., concurring); see Wright v. State, 427 So.2d 326 (Fla. 3d DCA 1983), no such objection was made below.

.While the written motion contained a catch-all allegation that the statements were not freely and voluntarily given, no testimony in support of this allegation was adduced.

. Curiously, the dissent notes that the trial court’s finding that the defendant’s statements were "involuntary” comes to us with a presumption of correctness, and that we cannot overturn such a finding if there is evidence in the record to support it. These legal rules do not apply here because first, the trial court disavows that it found the statements to be involuntary, and second, such a finding would have no record support in any event.

. At trial, the defendant did not request that the jury be instructed to consider this testimony for impeachment only, and on appeal, he does not complain of the trial court’s failure to give such an instruction.