## GERARD v STATE OF FLORIDA, DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES

Case No. 88-185-CA A02 (County Court Case No. 88-11592-TC A02)

Fifteenth Judicial Circuit, Palm Beach County

April 13, 1989

### APPEARANCES OF COUNSEL

**Ronald E. D'Anna, Esquire,** Mattlin, McClosky & North, for petitioner.

**Enoch J. Whitney, Esquire,** General Counsel, for respondent.

Before CARLISLE, COHEN, MILLER, JJ.

## OPINION OF THE COURT

JAMES T. CARLISLE, Circuit Judge.

### ORDER DENYING PETITION FOR COMMON LAW WRIT OF CERTIORARI

The appellant contends the suspension of his driver's license under the implied consent law should be reversed because the police advised him of the implications of the implied consent law and his Miranda Rights in such a way as to lead him to believe he could refuse to submit to a breathalyzer test until he had the opportunity to consult with counsel. He relies on *Weisman v Sullivan* 211 NW 2d 906 (Nebraska, 1983).

At the implied consent hearing, Officer Budash could not remember what occurred at the Batmobile in connection with the reading of the implied consent and the Miranda Rights.

"Q. Was he read his Miranda Rights?

A. I believe he would be, yes, by the Batmobile operator.

Q. . . . do you know if they were read simultaneously, one right after the other, before he indicated what he wished to do?

A. That might very well be the case, but the implied consent would be the first of the two . . .

Q. What I want, what I would like you to answer, sir, is, was it read immediately after the implied?

A. That is a real possibility, but I would not know without looking at the tape."

On the other hand, the defendant was clear that the implied consent and the Miranda Rights were read simultaneously.

"Q. Were you, in addition to being read and asked about performing tests, were you asked about Miranda Rights?

A. Yes, I was instructed about my Miranda Rights, since I thought I did have a right to an attorney.

Q. O.K., were you advised separately, or were they read to you together?

A. They were read together."

A video tape of these proceedings was taken at the Batmobile.

Defense counsel did not introduce the tape into evidence, assuming the State would have furnished it. He asked for a continuance for the purpose of producing the tape. That motion was denied.

Appellant had the burden of showing by the greater weight of the evidence that the manner in which the Rights were read led him to his erroneous belief and refusal to submit to the test. This appellant failed to do. An examination of the transcript of testimony reflects not so much that appellant was confused but that he wanted to talk to an attorney because he:

> "didn't know they're inaccurate. I didn't know exactly what the accuracies are. I heard rumors if you put a penny in your mouth you could throw it off. Like I heard before, a lady didn't blow exactly hard enough into it. I didn't want to risk my whole future just on an inaccurate test."

This case must be affirmed on the authority of *Nelson v State,* 508 So.2d 49, and *State v Hoch,* 500 So.2d 597.

### CONCURRING OPINION

I agree that appellant failed to carry his burden that any confusion he had was provoked by the manner in which the rights were read. But I am not without misgivings.

*Hoch* supra holds that an accused has no *right* to refuse to take the test and that as a matter of legislative grace, he has the mere option of doing so *(Hoch* supra at 600). The word "option" carries some connotation of right. To the extent the implied consent statute permits a refusal, it is only a legislative recognition that it is not worth the trouble to obtain a blood sample by force. Yet, no doubt the police have the right to do so, *Schmerber v California,* 384 US 757, 86 S.Ct. 1826, 16 L.Ed. 908 (1966). The Legislature might well have, and may some day authorize, a taking of a blood sample against the will of the defendant. The Legislature might also have provided a separate crime for refusal to take the breathalyzer, or the imposition of a civil penalty, as it has done in boating while impaired (see Chapter 88-133, Laws of Florida). The notion that one has a right or an option of refusal is absurd when the penalty for refusal is the suspension of the driver's license. That logic, when applied to other crimes, would result in a right to commit crime if one is willing the serve the sentence.

Nevertheless, I have had the experience of presiding over cases in which officers certified a refusal for such things as refusal to perform physical tests, or refusal to answer questions. All that is required under the statute is that a person submit to a breathalyzer. Yet persons

requested to take breathalyzer tests are also asked to perform physical tests as well as to answer such incriminating questions as "Have you been drinking?" "What have you been drinking?" "How much have you been drinking?" "When did you stop drinking?" "Were you drinking?" The implied consent law does not require these tests be performed and the Constitution requires the advice of counsel prior to this form of interrogation.

The procedure surrounding breath testing includes interrogation. The form on which the test results are noted contains incriminating questions and spaces on which the answers are to be noted.

The fact of that matter is, police officers charged with the duty of administering the implied consent law often confuse what is required under the Statute. If officers confuse what is required, *a fortiori* defendants ought to be able to consult with counsel if only to obtain advice on what is required.

The right to counsel is the most essential right to the fair operation of the criminal justice system. Other rights might be abridged or nonexistent but a criminal justice system laboring under those imperfections might still be deemed fundamentally fair. For example, the right to trial by jury exists only in a few legal systems. Yet those systems are not regarded as fundamentally unfair. The right to counsel is the *Sine qua non* of fairness.

Other courts have assiduously protected that right. In *Brewer v Williams,* 430 US 387, 51 L.Ed2d 727, 97 S.Ct. 1232 (1977), the "Christian burial case", Williams had consulted twice with an attorney in Des Moines and twice with an attorney in Davenport. He had been advised on several occasions of his right to remain silent until he could consult with counsel. Nevertheless the United States Supreme Court stated: "It is true that Williams had been informed of and appeared to understand his right to counsel. But waiver requires not merely comprehension but relinquishment . . ." See also *Wakeman v State,* 237 So.2d 61 (Fla. 4th DCA 1970), *Craig v State,* 216 So.2d 19 (Fla. 4th DCA 1968), and *Singleton v State,* 344 So.2d 911 (3DCA).

Finally, *Hoch* cites *State v Blue,* 9 Fla. Supp.2d 3 (1985), and concludes that allowing defendants to consult with attorneys would create an administrative nightmare for the police. *Hoch* adopts the rationale of *Blue* as follows:

"(1) the Batmobile had no phone and, if an inebriated person were taken to a phone, there was a possibility he could be injured, and if a telephone were installed, the transmission would interfere with the

44

radio equipment; (2) there were usually multiple defendants, each of whom had to be watched for twenty minutes before the test could be taken, and there was no way for those defendants to be private with their attorneys and, if there were a way for them to be private, then they could not be watched for the time required; and (3) indigent arrestees would not be protected because the public defender will not become involved in the standard DUI arrest."

I have been dealing with Batmobile cases since the inception of the Batmobile. I have observed countless films of defendants requesting to consult with counsel and being allowed to do so. The procedure was for the Batmobile officer and the defendant to step to a nearby pay telephone and call the attorney. The officer continued to observe the defendant during the conversation with the attorney. The entire process took less than five minutes. As to multiple defendants, the twenty minute observation took place during the performance of the physical tests. There was no administrative nightmare. Yet, *Section 901.24 Fla. Statutes* requires a person arrested be allowed to consult with an attorney. *Hoch* supra tries to sidestep *901.24 Fla. Statutes* on the basis of an administrative nightmare that is no more than a daydream. In any case, if the courts were to ignore statutes because they create an administrative nightmare, we would have to do without much of our laws.

Before a defendant can be said to have refused to take the test the record should be clear as to exactly what it was the defendant refused. The record should also be clear that defendant was not confused with a requirement to submit to the test and his right to counsel prior to submitting to interrogation. In this case, however, it is

ORDERED this 13th day of April, 1989, at West Palm Beach, Palm Beach County, Florida.