WEBSTER, Judge,
concurring in part, and dissenting in part.
I concur in that portion of the majority opinion which reverses and remands. However, I believe that the final order of the Department (HRS) should be reversed, and the matter remanded with directions that HRS expunge the “proposed confirmed report,” as recommended by the hearing officer. Accordingly, I dissent from the majority’s analysis, and from all of its other holdings.
It is necessary to note what is, and what is not, an issue properly before this court. The only issue raised by the parties is whether HRS correctly rejected the hearing officer’s “conclusion that the facts found by her do not constitute mental injury as defined in Section 415.503(11), Florida Statutes." In fact, while the final order does not include any explanation for the result reached, at oral argument, counsel for HRS acknowledged that the decision was based exclusively upon the view that section 415.503(11), Florida Statutes (1991), does not require evidence of the child’s prior intellectual or psychological level of function when an “abuse” report is sought to be upheld based upon allegations of actual or threatened “mental injury.” Accordingly, the only dispute between the parties regard *1031 ing interpretation of section 415.503, Florida Statutes (1991), involves whether evidence of a child’s prior intellectual or psychological level of function must be presented when an “abuse” report is sought to be upheld based upon allegations of actual or threatened “mental injury.” Notwithstanding the lack of any dispute between the parties regarding the interpretation of other portions of section 415.503, the majority “hold[s] that the hearing officer and HRS erred in combining the statutory provisions to produce one standard which requires proof of mental injury.” Ante, at 1030.
There is, likewise, no dispute between the parties regarding the legal sufficiency of the findings of fact made by the hearing officer— the only issue is whether those findings prove the charges made against appellant in the report. Notwithstanding the lack of any dispute between the parties regarding the legal sufficiency of the findings, the majority holds that the findings “are insufficient,” apparently because “[t]he order merely summarizes the testimony of the witnesses without accepting or rejecting the testimony.” Ante, at 1030.
It is my understanding that, as a general rule, appellate courts do not consider issues unless they have been raised and addressed in the briefs. E.g., State v. Williams, 198 So.2d 21 (Fla.1967); City of Miami v. Steckloff, 111 So.2d 446 (Fla.1959); Armstrong v. Data Processing Institute, Inc., 509 So.2d 1298 (Fla. 1st DCA 1987); Cadillac Fairview of Florida, Inc. v. Cespedes, 468 So.2d 417 (Fla. 3d DCA), review denied, 479 So.2d 117 (Fla.1985); Polyglycoat Corp. v. Hirsch Distributors, Inc., 442 So.2d 958 (Fla. 4th DCA 1983), review dismissed, 451 So.2d 848 (Fla.1984). I can only conclude that the majority chooses to raise, and then to decide, issues not addressed by the parties because it recognizes that the final order cannot stand, but is unwilling to reach the result compelled by the posture in which the matter reaches us.
HRS prepared a “proposed confirmed report,” as that term is defined in section 415.503(15), Florida Statutes (1991), identifying appellant as the “perpetrator of ‘mental abuse,’ ‘other mental injury-abuse,’ and ‘other threatened harm’ ” upon his 12-year-old son. When HRS denied his request that it either amend or expunge that report, appellant sought a formal administrative hearing, pursuant to sections 415.504(4)(d)l.b. and 120.57(1), Florida Statutes (1991).
It is not necessary to discuss in detail the hearing officer’s findings of fact, which were adopted by HRS (but were, for some reason, deemed legally insufficient by the majority). It will suffice to note that she found that the “family was dysfunctional by anybody’s standards”; that, far from being ideal parents, appellant and his former wife “were, on specific occasions, horrific”; and that “the best interest of the child was undoubtedly served when the Circuit Court removed him from the custody of’ appellant and his former wife “and placed [him] with his maternal grandparents” (where he apparently continues to reside). The hearing officer found, further, that appellant’s son had had “emotional and psychological problems” and a learning disability for some time prior to the two specific incidents relied on by HRS to support its report. Finally, the hearing officer found that there was no competent evidence from which one might determine how the child had functioned intellectually or psychologically prior to the two specific incidents relied on by HRS.
HRS is required to establish a central “child abuse” registry, and to retain confirmed reports of “child abuse” for fifty years. § 415.504, Fla.Stat. (1991). For those purposes, “‘[c]hild abuse or neglect’ means harm or threatened harm to a child’s physical or mental health or welfare.... ” § 415.503(3), Fla.Stat. (1991). Section 415.503(9)(a), Florida Statutes (1991), states that “ ‘[h]arm’ to a child’s health or welfare can occur when the parent or other person responsible for the child’s welfare ... [i]n-flicts, or allows to be inflicted, upon the child physical or mental injury.” (The report naming appellant alleged only “mental abuse,” “other mental injury-abuse” and “other threatened harm.” It did not allege any actual or threatened physical “harm” or “abuse.”) According to section 415.503(11), Florida Statutes (1991), “‘[m]ental injury’ means an injury to the intellectual or psychological capacity of a child as evidenced by a *1032 discernible and substantial impairment in his ability to function within his normal range of performance and behavior, with due regard to his culture.”
The hearing officer concluded that, to sustain its “proposed confirmed report,” HRS was required to establish by the greater weight of the evidence that appellant “harmed or threatened harm to [his son’s] mental health or welfare by the infliction of mental injury.” (Emphasis in original.) The hearing officer concluded, further, that, given the clear language of section 415.503(11), to carry its burden, HRS was obliged to present competent evidence sufficient to establish that it was more likely than not either that the child’s ability to function intellectually or psychologically had been discernibly and substantially impaired, or that there had been a meaningful threat of such an impairment, as the result of the two specific incidents relied on. To do this, it was necessary, in turn, that HRS present competent evidence sufficient to establish what the child’s intellectual and psychological conditions had been before the two incidents. Because HRS presented no evidence regarding the child’s intellectual or psychological condition before the incidents, the hearing officer concluded that HRS had failed to carry its burden and, accordingly, recommended that the report be expunged.
In its final order, HRS adopted all of the hearing officer’s findings of fact. It also adopted all of her conclusions of law, “except for her conclusion that the facts found by her do not constitute mental injury as defined in Section 415.503(11), Florida Statutes.” The final order includes no further explanation for the result reached. However, as I have previously explained, at oral argument, counsel for HRS acknowledged that the decision had been based exclusively upon the opinion that section 415.503(11) does not require evidence of the child’s prior intellectual or psychological level of function when an “abuse” report is sought to be upheld based upon allegations of actual or threatened “mental injury.”
Unlike the majority, I believe that the hearing officer correctly interpreted the statute. I can discern nothing unclear or ambiguous about the language used by the legislature in section 415.503(11). Read in context, it seems to me clearly to require that, to establish “abuse” (which is defined as “harm or threatened harm”) by a “mental injury,” it is necessary to prove by the greater weight of the evidence either that the child’s intellectual or psychological function has been discernibly and substantially impaired, or that there has been a meaningful threat of such an impairment, as a result of the specific acts of “abuse” alleged. It is difficult to comprehend how one might go about meeting such a burden without first establishing (by either lay or expert testimony) what the child’s intellectual or psychological condition had been prior to the specific acts alleged to have constituted the “abuse.”
In the absence of an ambiguity, there is no reason to resort to rules of construction. The words of a statute must be given their plain and ordinary meanings. E.g., Streeter v. Sullivan, 509 So.2d 268 (Fla.1987); A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157 (1931). Courts are “without power to construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.” American Bankers Life Assurance Co. of Florida v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968). It is not within our province to offer our views regarding the wisdom of laws passed by the legislature, or of the language used; it is our responsibility merely to determine the meaning of what the legislature has written.
I find it noteworthy that, although the majority concludes that the hearing officer and HRS have both misinterpreted the applicable statute, it offers no guidance as to the proper interpretation. It informs us that “child abuse” may include “threatened,” as well as actual, “harm,” a statement with which one can find little fault, given the unambiguous language of sections 415.503(1) and (3). However, it fails to explain by what objective standard one is to determine whether the “threatened harm” rises to a level sufficient to sustain a decision to place the alleged “abuser’s” name on the central *1033 registry. In particular, the majority fails to inform us how, if not by reference to the definition of “[mjental injury” found in section 415.503(11), in a case such as this, one is to make an objective determination as to whether sufficient “harm or threatened harm to a child’s ... mental health or welfare” has occurred to justify a finding of “child abuse.” One would think that, having found the interpretation of both the hearing officer and HRS to be incorrect, the majority would enlighten us with the correct interpretation.
Because I believe that the hearing officer correctly interpreted the applicable statute, and because it is undisputed that no evidence was offered regarding either the intellectual or the psychological condition of appellant’s son prior to the two specific incidents relied on by HRS to support its report, it seems to me clear that HRS failed to prove the charges made against appellant in the report. Accordingly, I would reverse the final order, and remand with directions that the “proposed confirmed report” be expunged, as recommended by the hearing officer.